**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DONALD J. KINSELLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| BAKER HUGHES OILFIELD OPERATIONS, | ) |
| LLC, and BAKER HUGHES, A GE | ) |
| COMPANY, LLC, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff, DONALD J. KINSELLA, by and through his attorneys, THE COFFEY LAW OFFICE, P.C., states as and for his Complaint against Defendants, BAKER HUGHES OILFIELD OPERATIONS, LLC, and BAKER HUGHES, A GE COMPANY, LLC, as follows:

**Nature of Case**

1. Plaintiff brings this action against Defendants to recover damages proximately caused by Defendants' illegal failure to accommodate, and discriminatory and retaliatory termination of his employment in violation of Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. 12101 *et seq.* (the "ADA"), and illegal retaliatory refusal to recall/rehire and discharge in violation of the Illinois Workers' Compensation Act, 820 ILCS § 305/1 *et seq.*, and the common law of the State of Illinois.

**Jurisdiction and Venue**

2. This Court has original jurisdiction over Plaintiff's ADA claims under 28 U.S.C. §§ 1331, 1337, and 1343.

3. This Court has supplemental jurisdiction over Plaintiff's state law retaliatory discharge and refusal to recall/rehire claims pursuant to 28 U.S.C. 1367(a).

4. Venue is proper in this Court in that Defendants conduct business in Illinois, maintain a registered agent in Illinois, and a substantial part of the events or omissions given rise to the claims occurred within the geographical boundaries of this Court's jurisdiction.

5. On April 4, 2018, Plaintiff filed a charge of illegal disability discrimination, as well as retaliation against Defendants with the local district office of the EEOC, Charge No. 440-2018-04300.

6. As more fully described in Pars. 35 to 42, below, Defendants by their statements and conduct misled and induced Plaintiff into forbearing the filing of an EEOC charge within the applicable limitations period. Defendants should therefore be equitably estopped from asserting a statute of limitations defense to Plaintiff's ADA claims.

7. On April 5, 2018, the EEOC issued a Notice of Right to Sue in connection with Plaintiff's Charge No. 440-2018-04300. A copy of the EEOC Notice is attached hereto. This Complaint has been filed within 90 days of Plaintiff's receipt of the EEOC Notice.

## The Parties

8. Plaintiff, Donald J. Kinsella (hereafter "Donald"), is an individual who at all relevant times resided and resides in Will County, Illinois, within the jurisdictional boundaries of this Court.

9. Defendant Baker Hughes Oilfield Operations, LLC, is a foreign limited liability company licensed to do business in Illinois and conducting business at several locations throughout Illinois. Defendant Baker Hughes Oilfield Operations, LLC, is a wholly-owned subsidiary of Defendant Baker Hughes, a GE Company, LLC. Defendant Baker Hughes Oilfield Operations, LLC, was formerly known as Baker Hughes Oilfield Operations, Inc.

10. Defendant Baker Hughes, a GE Company, LLC, is a foreign limited liability company licensed to do business in Illinois and conducting business at several locations throughout Illinois. Defendant Baker Hughes, a GE Company, LLC, owns and operates subsidiary Defendant Baker Hughes Oilfield Operations, LLC. Defendant Baker Hughes, a GE Company, LLC, was formerly known as Baker Hughes, Inc.

11. Defendants were the single and/or joint employer of Donald and will be jointly referred to hereafter as "Baker Hughes."

12. Baker Hughes employs more than 500 workers and is thus an "employer" within the meaning of the ADA.

### Relevant Facts

13. Donald began his employment with Baker Hughes in June 2012 as a Field Operator I.

14. Donald's most recent position was Field Operator III.

15. Don was a "rotational" Field Operator for Baker Hughes meaning he could be assigned to work at any of Baker Hughes projects throughout the world.

16. In June 2013, in the course of his employment with Baker Hughes and while working on a jobsite in Carlsbad, New Mexico, Donald sustained serious injuries as a

result of a violent projectile impact.

17. Donald immediately reported the accident to Baker Hughes, and fully cooperated and complied with Baker Hughes' work accident and injury reporting procedures.

18. Donald thereafter received related medical treatment and physical therapy.

19. In 2013, Donald, through counsel, filed a workers' compensation action against Baker Hughes with the New Mexico Workers' Compensation Administration related to his June 2013 workplace accident and injuries (Case No. 13-59374).

20. At all times relevant herein, Donald complied with all requests, requirements and procedures imposed by Baker Hughes with respect to keeping it informed of his medical status and ability to work, as well as transmitting his doctor's work status reports to Baker Hughes.

21. From the date of his injury through January 2016, Donald's doctors determined and reported that he was unable to work. During this time, Donald applied for and received collateral disability benefits.

22. On April 18, 2016, Baker Hughes wrote Donald advising him that it considered him to be on an unapproved leave of absence, that if he felt he needed an accommodation under the ADA, to complete and return the attached form by April 22nd, and that if it did not hear back from him by Aril 30th, his employment would be terminated.

23. On April 28, 2016, Don submitted the completed ADA reasonable accommodation form to Baker Hughes describing his work limitations and seeking to return to work.

24. On June 27, 2016, Donald submitted to a Functional Capacity Evaluation at the request of Baker Hughes' third-party administrator.

25. On July 12, 2016, after reviewing the results of FCE testing, Donald's doctor released him to return to work to modified work/activity with permanent work restrictions for bilateral knee osteoarthritis per the FCE report. Donald's doctor recommended vocational rehabilitation.

26. Baker Hughes timely received both the FCE report and Donald's doctor's work release report.

27. Donald thereafter complied with all requests, requirements and procedures imposed by Baker Hughes with respect to his transition back to work subject to the restrictions set forth in his doctor's July 12th report and the FCE report.

28. On July 21, 2016, Baker Hughes, through its third-party administrator, denied Donald's request for accommodation stating only that it "would impose an undue hardship" on Baker Hughes.

29. Also, on July 21, 2016, a Baker Hughes HR representative told Don that Baker Hughes could not accommodate him and that he had 30 days to apply for and secure employment in an open position he was qualified for via www.bakerhughes.com/careers.

30. On August 16, 2016, Baker Hughes wrote to Donald stating that "The 30-day period exhausted on August 21, 2016 and you have not successfully secured a position within Baker Hughes. Your employment will be terminated effective August 22, 2016 as a result."

31. On September 10, 2016, Donald applied for a 24-hour Dispatcher position located in Odessa, Texas.

32. On information and belief, Donald could have performed the essential functions of the Dispatcher position with or without reasonable accommodation.

33. Baker Hughes did not respond to or reply in any way to Donald's application for the Dispatcher position.

34. On October 25, 2016, Baker Hughes wrote to Donald stating that, "Although there were positions available and presented to you including a Dispatcher position, you did not apply so that we could complete the process with you. As a result, your employment will be terminated effective October 25, 2016."

35. On October 31, 2016, Donald wrote to Baker Hughes contesting the termination, and attaching a copy of the confirmation page showing that Baker Hughes received his application for the Dispatcher position on September 10, 2016.

36. On or about November 16, 2016, Donald participated in a telephone conference with Hal Roach, Baker Hughes HR Manager-Investigations. Mr. Roach confirmed that he was investigating circumstances surrounding the termination of Plaintiff. Donald requested that Baker Hughes reinstate his employment and benefits immediately and retroactively.

37. On December 1 and 12, 2016, Mr. Roach again confirmed by e-mail that the investigation was ongoing, that he would keep Donald updated, and that he should have a more substantive response by the end of the week.

38. On January 25, 2017, Mr. Roach e-mailed Donald's counsel stating:

As a quick update, we have obtained what should be the necessary approvals to reinstate Don Kinsella to his prior status of 'Inactive/LTD.' This was his status at the time of his termination. There are still details to be worked out as far as status of health benefits, exactly when this will be actioned, etc.; I will have more on that for you in the next few days. I do not anticipate a lengthy process. Once reinstatement is finalized, we will also be in contact with him regarding the return to work process we were working through with him as of October.

39. On March 13, 2017, Mr. Roach e-mailed stating he was "working on putting together a more comprehensive letter" pursuant to the ongoing communications between Donald and Baker Hughes regarding Donald's reinstatement.

40. In April 2017, Mr. Roach e-mailed stating that there had been an organizational change at Baker Hughes; but, he had identified the decision-makers and was scheduling a meeting with them the following week, and was "hope[ful] to have something to you next week."

41. From November 2016 consistently and through to mid-July 2017, the parties exchanged a series of e-mails and had several telephone discussions regarding Donald's reinstatement of employment and benefits, as well as settlement of his claims.

42. At no time during these communications did Baker Hughes say or indicate that it withdrew its stated intention to reinstate Donald's employment and benefits.

**Count I: Disability Discrimination in Violation of the ADA**

43. Donald restates and fully incorporates into Count I his allegations set forth in Paragraphs 1 through 42, above.

44. The ADA makes it unlawful for an employer such as Baker Hughes to discriminate against a qualified individual on the basis of a disability in regard to discharge of employees, employee compensation, job training and other terms,

7

conditions and privileges of employment, including a failure to make reasonable accommodations to the known physical and mental limitations of an employee who is otherwise a qualified individual with a disability. See 42 U.S.C. § 12112(a) and (b).

45. At the relevant times, Donald was "disabled" as defined under the ADA.

46. At the relevant times, Donald was a "qualified individual" as defined under the ADA. See 42 U.S.C. § 12111(8).

47. As described above, in April 2016, Donald requested that Baker Hughes provide him with a reasonable accommodation in the form of returning him to work in a position that he could perform the essential functions of with or without accommodation.

48. As described above, in September 2016, Donald applied for an open Dispatcher position for which he was qualified and could perform the essential functions of with or without reasonable accommodation.

49. Baker Hughes' failure to reply and otherwise interact with Donald with respect to the open Dispatcher position was an illegal failure to reasonably accommodate him in violation of the ADA.

50. As described above, Baker Hughes' October 2016 discharge of Donald for the false and pretextual stated reason that he did to apply for jobs including the Dispatcher job, was illegal disability discrimination in violation of the ADA.

51. On information and belief, Baker Hughes has treated similarly-situated, non-disabled employees more favorably than Donald.

52. As a direct and proximate result of Baker Hughes' illegal conduct as described above, Donald has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security and other benefits in a sum

to be proven at trial, and has suffered emotional and physical pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

53. Baker Hughes knew that its acts/omissions as described above were prohibited by the ADA or acted with reckless disregard to that possibility. Baker Hughes should therefore be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

### Count II: Retaliation in Violation of the ADA

54. Donald restates and fully incorporates into Count I his allegations set forth in Paragraphs 1 through 42, and 45 to 48 above.

55. The ADA prohibits employers from retaliating against employees who assert their right under the act to be free from discrimination prohibited by the ADA, and from coercing, intimidating, threatening or interfering with an employee's exercise of an ADA right. See 42 U.S.C. §§ 12203(a) and (b).

56. As described above, Donald engaged in activities protected by the ADA including requesting accommodation to return him to work.

57. Baker Hughes took the above-described acts and omissions against Donald including failing to accommodate him and then firing him because of his ADA-protected activity in violation of the ADA.

58. On information and belief, Baker Hughes has treated similarly-situated, non-ADA-protected employees more favorably than Donald.

59. As a direct and proximate result of Baker Hughes' illegal retaliation as described above, Donald has suffered mental and physical pain and anguish, a loss of

9

wages, including, but not limited to, salary, bonuses, a loss of employment benefits and other pecuniary and non-pecuniary damages.

60. Baker Hughes knew that its acts/omissions as described above were prohibited by the ADA or acted with reckless disregard to that possibility. Baker Hughes should therefore be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

### Count III: Retaliatory Discharge and Refusal to Rehire or Recall in Violation of the Illinois Workers' Compensation Act ("IWCA") and Illinois Common Law

61. Donald restates and fully incorporates into Count IV his allegations set forth in Paragraphs 1 through 42, above.

62. Section 4(h) of the IWCA states:

> It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

> It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act. 820 ILCS § 305 (4)(h).

63. As described above, Donald reporting to Chicago that he sustained severe injuries on the job in the June 2013 work accident, retaining counsel, filing a workers' compensation claim, and seeking medical treatment in connection with his related severe injuries are activities protected by Illinois common law and the IWCA.

64. Baker Hughes was aware of Donald's IWCA-protected activities.

65. As described above, in September 2016 and continuing Baker Hughes failed to recall/rehire/return Donald back to work in the open Dispatcher position or other suitable position because of his IWCA-protected activities.

66. As described above, in October 2016, Baker Hughes discharged Donald because of his IWCA-protected activities.

67. Baker Hughes' September 2016 and continuing refusal to recall/rehire and October 2016 discharge of Donald violated the IWCA and Illinois common law.

68. As a direct and proximate result of Baker Hughes' illegal retaliation as described above, Donald has suffered mental and physical pain and anguish, a loss of wages, including, but not limited to, salary, bonuses, a loss of employment benefits and other pecuniary and non-pecuniary damages.

69. Baker Hughes knew that its acts/omissions as described above were prohibited by the IWCA and/or Illinois law, or acted with reckless disregard to that possibility. Baker Hughes should therefore be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

## **Prayer for Relief (as to all Counts)**

WHEREFORE, Plaintiff DONALD KINSELLA, respectfully requests that this Court enter judgment in his favor and against Defendants, BAKER HUGHES OILFIELD OPERATIONS, LLC, and BAKER HUGHES, A GE COMPANY, LLC, jointly and severally, as follows:

    A. Order Defendants to make DONALD whole by paying him appropriate back pay and reimbursement for lost pension, social security and other benefits and out-of-pocket expenses, plus pre-judgment interest in an amount to be shown at trial;

B. Order Defendants to immediately reinstate DONALD To his former position or another suitable position consistent with any medical restrictions he may have; or, in the alternative, order Defendants to pay DONALD an appropriate amount of front pay;

C. Order Defendants to pay DONALD compensatory damages in the maximum amount allowable under the law;

D. Order Defendants to pay DONALD punitive damages in the maximum amount allowable under the law.

E. Order Defendants to pay DONALD's costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees;

F. Try all issues of fact to a jury; and,

G. Grant such other relief as the Court deems just.

    Respectfully submitted,
    Plaintiff, DONALD KINSELLA,


    By:   /s/ Timothy J. Coffey
    Timothy J. Coffey, Esq.
    THE COFFEY LAW OFFICE, P.C.
    Attorneys for DONALD KINSELLA
    1805 North Mill Street, Suite E
    Naperville, IL 60563
    (630) 326-6600
    tcoffey@worker-law.com